UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEFFREY DAGEN,

        Plaintiff,

1:05-CV-1593
(LEK/DRH)

    -against-

MARRIOTT INTERNATIONAL, INC.,
and the MARRIOTT HOTEL SERVICES,
INC., *d/b/a* NEW YORK MARRIOTT
MARQUIS, TIMES SQUARE,

        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. Background**

Plaintiff Jeffrey Dagen ("Plaintiff"), who is a resident of Albany County, New York, made reservations and paid for two rooms at the New York Marriott Marquis in Times Square, New York City for the nights of December 31, 2004 and January 1, 2005 for a total cost of approximately $4,000.00. Complaint (Dkt No.1, Attach. 2) at ¶¶ 1, 5. Defendants Marriott International and Marriott Hotel Services ("Defendants"), own and operate the hotel in New York City known as the Marriott Marquis, Times Square. Id. at ¶ 4. Defendant has its corporate headquarters in Washington, D.C. Id. at ¶ 3. Plaintiff states in his affidavit that Defendant never provided him with a written contract for the arrangements he had made to stay at the hotel, nor had Defendant provided Plaintiff with any rules upon which it could terminate guests' rights to stay in the hotel. Plntf's Aff in Opp. (Dkt. No. 4, Attach. 2) at ¶ 5. On December 31, 2004,

1

Plaintiff drove his vehicle from Latham, New York, to Manhattan, New York. Complaint (Dkt. No.1, Attach. 2) at ¶ 6. Plaintiff asserts that he had arranged to park his vehicle at Defendants' parking facility, but at the last minute made alternate arrangements because Defendants' facility could not accommodate his vehicle. Plntf's Aff. in Opp. (Dkt. No.4, Attach. 2) at ¶ 6.

Plaintiff and his guests checked into the New York Marriott Marquis, Times Square and they ordered food and alcoholic beverages from room service, which room service continued to deliver until shortly before midnight. Id. at ¶ 7. Plaintiff claims that at no time on December 31, 2004, did he get into a fight with any hotel guest or staff member, or become disorderly. Id. at ¶ 8. Plaintiff also claims that he did not get sick, or pass out, and that he "stayed in [his] room most of the time and stayed out of trouble." Id. However, just prior to midnight, Plaintiff observed one of the female guests, who was staying in the second room, lying face down in the hallway outside of that room. Id. at ¶ 9. Plaintiff asserts that he does not know definitively whether the woman was taken to an area hospital for treatment for "either an illness or an adverse reaction to something she ate or drank." Id. at ¶ 10. Plaintiff also maintains that "since [his] friend and his guests were in their own room, their activities were not under [his] supervision or control," and that he neither ordered nor provided alcoholic beverages to his friend or his friend's guests, and has no exact knowledge of what they ordered or consumed. Id. at ¶¶ 11-12.

Defendant has submitted an affidavit of an employee, Michael Dominguez, Director of Loss Prevention at the New York Marriott Marquis Hotel, who was working on the night of the incident. Dominguez Aff. (Dkt. No. 5, Attach. 2, Ex. C) at ¶¶ 1-2. Mr. Dominguez learned that there was a woman lying unconscious in a corridor of the hotel, and paramedics and police were

2

called to assist and investigate the situation. Id. at ¶ 3. Mr. Dominguez then went up to that corridor and found the woman lying on the floor. Id. at ¶ 4. He observed one of Plaintiff's male guests attending to the woman. Id. The male guest indicated that there had been an altercation in the room and that one of the other male guests was causing trouble, which apparently caused the woman to flee from the room, where she then collapsed in the corridor. Id. Mr. Dominguez stated that when he learned about the altercation, he conferred with the New York City Police and the decision was made that Plaintiff and his guests should leave the hotel. Id. at ¶ 5. Just before midnight on December 31, 2004, Defendants terminated Plaintiff's and his guests' rights to stay in the rooms that Plaintiff had reserved and paid for. Complaint (Dkt. No.1, Attach. 2) at ¶ 11. By that time, Plaintiff had consumed many alcoholic beverages, which had been served to him by Defendants' room service. Id. at ¶ 9. Mr. Dominguez states that Plaintiff and his guests left Defendants' hotel voluntarily, so the police did not make any arrests. Dominguez Aff. (Dkt. No. 5, Attach. 2, Ex. C) at ¶ 5. Plaintiff asserts that, as he was escorted from the hotel, he informed Defendants that he "was way too tired to drive home, that [he] had been drinking and did not want to drive a vehicle, and that [he] lived in upstate New York, [and] . . . would be forced to drive home if [he] found no place else to stay that night." Plntf's Aff. in Opp. (Dkt. No.4, Attach. 2) at ¶ 16.

After Plaintiff was escorted from the hotel, Plaintiff tried to find other shelter for the night of December 31, 2004, but was unable to find any "suitable" alternative. Complaint (Dkt. No.1, Attach. 2) at ¶ 19. Plaintiff returned to his vehicle and began to drive home to the Albany area. Id. at ¶ 20. However, in the early morning of January 1, 2005, Plaintiff's vehicle went off

3

the road and struck a tree along the highway, which allegedly caused major injuries to Plaintiff. Id. at ¶ 21. From these injuries, Plaintiff claims that he endured pain, suffering, and mental anguish. Id. at ¶ 24. It turned out not to be such a happy New Year.

Plaintiff is suing Defendants for breach of contract and negligence, and claims damages of approximately $750,000.00. Id. at ¶ 25. Defendants have filed a Motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defts' Motion (Dkt. No. 3).

## II. Standard of Law for 12(b)(6) Motions

The Court may dismiss a case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) when the facts alleged in the complaint fail to state a claim upon which relief may be granted. Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr., 180 F. Supp. 2d 387, 389-390 (N.D.N.Y. 2001) (Munson, Senior D.J.) (citing Teltronics Services, Inc. v. LM Ericsson Telecomm., Inc., 642 F.2d 31, 34 (2d Cir. 1981)). The Supreme Court has held that "(w)hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894-895 (2d Cir. 1976) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Granting a motion to dismiss under Rule 12(b)(6) is only warranted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

4

"The task of the court in ruling on a 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." Americorp Fin., Inc., 180 F. Supp. 2d at 390. "In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim." Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc., 44 F. Supp. 2d 172, 174 (N.D.N.Y. 1999) (McAvoy, C.J.) (citing Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir. 1997)).

### III. Discussion

### *A. Breach of Contract Issue*

"Although the standards for dismissing the complaint are federal standards, the federal district court judge must stand in the shoes of a state court judge when ruling on contract issues in a diversity case." Lipsky, 551 F.2d at 895 (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Kurzweg v. Hotel St. Regis Corp., 309 F.2d 746 (2d Cir. 1962)). In order to establish a breach of contract claim, there must be a "valid contract between the parties, and a breach of that agreement." Winne v. The Equitable Life Assurance Soc'y of the United States, 315 F. Supp. 2d 404 (S.D.N.Y. 2003). It is well settled under New York law that "to establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2)

breach by the other party; and (3) damages suffered as a result of the breach." <u>Americorp Fin., Inc.</u>,180 F. Supp. 2d at 390 (citing <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 245-246 (2d Cir. 2000)). "In pleading such a claim, plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." <u>Americorp Fin., Inc.</u>, 180 F. Supp. 2d at 390. The Court should construe Plaintiff's allegations liberally under Rule 8 of the Federal Rules of Civil Procedure, but "the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." <u>Id.</u>

Considering the relevant law and examining the facts in the light most favorable to Plaintiff, Plaintiff has alleged facts upon which relief may be granted, and Plaintiff is entitled to present evidence to support his claims. Therefore, Defendants' Motion is denied as to the breach of contract claim.

### *B. Negligence Issue*

The second issue the Court must consider is whether Plaintiff has made a valid negligence claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). A finding of negligence must be based on a duty and a breach of that duty and if "the defendant owes no duty to the plaintiff, the action must fail." <u>Darby v. Compagnie Nat'l Air France</u>, 96 N.Y.2d 343, 347 (2001). Before a jury can determine whether and to what extent a particular duty was breached, the courts must first determine whether any duty exists by identifying "what

6

people may reasonably expect of one another . . . [and] define the boundaries of 'duty' to comport with what is socially, culturally and economically acceptable." Id. (citations omitted)

At this stage in the litigation, the Court must accept as true all of the allegations in the complaint and view them in the light most favorable to Plaintiff. Americorp Fin., Inc., 180 F. Supp. 2d at 390. As Defendants correctly note, if Plaintiff is arguing that a duty exists to protect Plaintiff from his voluntary intoxication, there is no claim that entitles him to relief. New York courts have "consistently refused to recognize a common-law cause of action against providers of alcoholic beverages in favor of persons injured as a result of their own voluntary intoxication." Sheehy v. Big Flats Community Day, Inc., 73 N.Y.2d 629, 636 (1989) However, Plaintiff asserts that he has not alleged that Defendants' liability springs from his voluntary intoxication. Instead, Plaintiff argues that Defendants had a duty to take reasonable care to assist Plaintiff not to be forced to drive when Defendants: (1) knew Plaintiff had been consuming legal beverages; (2) knew or should have known that no other lodging was likely to be available for Plaintiff on New Year's Eve in New York City; and (3) had been told by Plaintiff that he was too tired to drive home.

At common law, innkeepers have long had a duty to provide lodging and a safe harbor for their guests. Darby, 96 N.Y.2d at 347; see also De Wolf v. Ford, 193 N.Y. 397, 404 (1908) (". . . right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind.") Innkeepers have a duty to protect their patrons from reasonably anticipated injury on their premises. Cittadino v. De

7

Geonimo, 604 N.Y.S.2d 387, 388 (App. Div., 3d Dep't 1993). Typically, a landowner has no duty to prevent harms that occur off of the landowner's premises and out of her control. D'Amico v. Christie, 71 N.Y.2d 76, 85 (1987). While the injury at question here occurred on property beyond Defendants' control, Defendants are not mere landowners and their obligations to Plaintiff are necessarily higher. See Yashar v. Yakovac, 48 N.Y.S.2d 128, 134 (City Ct., New York City 1944) ("To hold that defendants' duty to protect plaintiff ended when their employee. . . kicked him off their premises, is to lose sight of the grave responsibility of an innkeeper in respect to his guest which may be likened to that of a carrier to its passenger.").

Defendants knew that Plaintiff had consumed a large amount of alcohol, which they had served, and that Plaintiff was, if not drunk, certainly not in tip-top shape. Furthermore, only the most credulous would believe that Defendants, as hoteliers, did not know that Plaintiff was unlikely to locate alternate lodging in New York City on New Year's Eve. Finally, Plaintiff claims that Defendants knew he had originally planned to park his car at the hotel's facilities and, as a result, must have known that he had driven to Manhattan from Upstate. In fact, Plaintiff asserts that he told Defendants, as he was escorted out the door, that by kicking him out, they were forcing him to drive home. Therefore, it was entirely foreseeable that Plaintiff's next stop after being kicked out of the hotel wasn't going to be on the set with Dick Clark filming "New Year's Rockin' Eve."[1]

---

[1] The Court recognizes that a stroke prevented Mr. Clark from hosting the annual New Year's Eve broadcast on December 31, 2004. However, many, including this Court, see Mr. Clark as the embodiment of New Year's Eve, and it will always be his night.

8

Accordingly, Defendants could reasonably foresee that some type of harm awaited Plaintiff if they expelled him from the hotel. Common sense and common courtesy hold that innkeepers are expected to shelter those who have sought their protection - and have a duty not to inject those same people into obviously dangerous situations. See Yashar, 48 N.Y.S.2d at 134 (A bartender observed the menacing actions of two men toward plaintiff and put them outside; where they waited. The bartender subsequently ejected plaintiff from the bar, though he could reasonably foresee that the two men were waiting to assail plaintiff. Therefore, the court held the bartender's employers liable for acts undertaken when danger could have been anticipated and no adequate precautions taken.). Weighing the facts in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged facts at this point of the litigation to state a claim of negligence such that his complaint can survive Defendants' Motion to dismiss. Therefore, Defendants' Motion is denied as to the negligence claim.

## IV. Conclusion

Accordingly, it is hereby

**ORDERED**, that the Defendants' Motion to Dismiss (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   December 18, 2006
         Albany, New York

_____
HONORABLE LAWRENCE E. KAHN
United States District Judge